Filed 10/29/20  P. v. Delgadillo CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FELIX DELGADILLO,<br><br>    Defendant and Appellant. | B295324<br><br>(Los Angeles County<br>Super. Ct. No. YA096701) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Scott T. Millington, Judge.  Affirmed.

Carolyn D. Phillips, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr., and Eric J. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

Felix Delgadillo appeals from convictions for kidnapping and battery against the mother of his child, contending (1) the recording of an anonymous 911 telephone call was improperly admitted into evidence at trial, and (2) the court erred in failing to hold on its own motion a hearing to determine whether he had the ability to pay restitution and fines. We disagree with both contentions, and thus affirm.

## BACKGROUND

On October 15, 2017, Delgadillo beat Claudia G., the mother of his child, threw her into the trunk of her white Toyota, and drove away from a hotel room they had rented. The abduction was witnessed by a man who called the Inglewood Police Department and anonymously reported the license plate number of the car and direction it had taken.

Inglewood Police Officers Joseph Lisardi and Daniel Lee, on patrol in the area, received a call about the abduction and located the Toyota. Pulling up behind it, the officers observed that the car had a flat tire with some tools nearby, but was empty. They saw Delgadillo and Claudia G. some distance away, and observed Delgadillo push Claudia G. to the ground and begin to hit her, then grab her by the legs and drag her out of view. Lisardi ran to where he last saw them, found Claudia G. "standing leaning against a car crying . . . and observed a male running down the alley westbound." Lisardi chased Delgadillo and arrested him.

When Lee spoke with Claudia G., she complained of pain "under her breast area," bore fresh scratches on her face, and was bestrewn with dirt and debris. She ultimately identified Delgadillo as her assailant and abductor.

2

At trial, the prosecution played a recording of the anonymous 911 call, in which the caller stated he had just seen a man beat a woman and throw her into the trunk of a car and drive away.

Claudia G. recanted her identification of Delgadillo and denied that he hit her or took her anywhere against her will, and testified that her contrary statements to police had been coerced or were otherwise unknowing.

The jury convicted Delgadillo of kidnapping and misdemeanor battery against the mother of his child. (Pen. Code, §§ 243, subd. (e)(1), 207, subd. (a).) The court sentenced him to 10 years in prison and imposed but stayed restitution fines in the amount of $300 (§ 1202.4, subd. (b)), imposed but suspended a $150 restitution fine, imposed a $500 domestic violence counseling fee, and assessed a $40 courtroom security fee and a $30 court facilities fee.

## DISCUSSION

### I.     The 911 Call Was Admissible

Before trial, the prosecutor moved to admit the 911 call as a spontaneous utterance under Evidence Code section 1240. Delgadillo opposed the motion, arguing that the 911 caller had said the incident occurred fewer than 10 minutes before the call, which showed that it was "not an emergency, not an excited utterance, not contemporaneous." After listening to the call, in which the caller stated Claudia G.'s Toyota "just drove past," and "just turned on Prairie," the court observed that the caller was neither excited nor fearful, did not ramble, and did not seem stressed. The court nevertheless found that the caller's having seen a woman placed in a trunk was "a very startling and outrageous event that would cause a lot of excitement," the

incident had occurred within "ten minutes or less" of the call, and the call appeared to have been made during "an ongoing emergency that the witness is relaying to the police officer, [and] does not appear to be testimonial." In light of these findings, the court found the call was admissible as an excited utterance.

Delgadillo contends the 911 call, which was played for the jury and constituted the only evidence supporting a kidnapping charge, was inadmissible hearsay. We disagree.

Hearsay evidence is a statement made by a witness not testifying at the hearing and offered to prove the truth of the matter asserted. (Evid. Code, § 1200, subd. (a).) Hearsay is inadmissible unless an exception applies. (Evid. Code, § 1200, subd. (b).)

"Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception." (Evid. Code, § 1240.) " 'To render [statements] admissible [under the spontaneous declaration exception] it is required that (1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it.' " (*People v. Poggi* (1988) 45 Cal.3d 306, 318.) Statements made under the immediate influence of an occurrence to which they relate are deemed sufficiently trustworthy to be

4

presented to the jury based on the common understanding " 'that in the stress of nervous excitement the reflective faculties may be stilled and the utterance may become the unreflecting and sincere expression of one's actual impressions and belief.' " (*Showalter v. Western Pac. R., Co.* (1940) 16 Cal.2d 460, 468.)

We review the trial court's decision to admit evidence for abuse of discretion. (*People v. Williams* (1997) 16 Cal.4th 153, 196-197.) The court's determination of preliminary facts will be upheld if supported by substantial evidence. (*People v. Brown* (2003) 31 Cal.4th 518, 541.)

Here, the 911 caller reported that he witnessed the Claudia G. abduction, which occurred fewer than 10 minutes before the call, and reported that her car "just drove past" him and "just turned" onto a street. This evidence supported the trial court's contemporaneity and spontaneity findings. Therefore, the court properly found the anonymous caller's statements to a 911 operator were spontaneous utterances that were admissible under Evidence Code section 1240.

Delgadillo argues the audio tape of the 911 call revealed that the caller was neither excited nor fearful, neither rambled nor seemed stressed. He further argues that because the caller reported that the crime had occurred less than 10 minutes before the call, no evidence suggested the call was spontaneous. Therefore, insufficient evidence supported admission of the 911 call. We disagree. First, the record indicates the caller said the crime occurred fewer than 10 minutes before the call, not 10 minutes before. But even had he waited 10 minutes to report the abduction, the trial court would still have been justified in concluding the call was spontaneous. The issue is whether the declarant was still under the stress of an event when he made a

hearsay statement, and thus has had no time to contrive and misrepresent, i.e., "while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance." (*People v. Poggi, supra,* 45 Cal.3d at p. 318.) A short lapse of time between an event and a hearsay statement reporting the event is inconsequential. And a declarant need not be overtly excited for the trial court to conclude that nervous excitement dominated and reflective powers were yet in abeyance. The court must consider all the circumstances, the caller's demeanor being only one. The nature of the crime itself is another probative circumstance. (See *ibid.*) Here, the court could reasonably have found that the sight of a man beating a woman and throwing her into the trunk of a car was such as would create nervous excitement in any witness, whether or not the witness overtly displayed that excitement.

Delgadillo argues for the first time in his reply brief that admission of the 911 call violated his confrontation rights under the United States and California Constitutions. We disagree.

In a criminal prosecution, the accused enjoys the right to confront accusing witnesses. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) Admission of "testimonial hearsay" against a criminal defendant violates this right. (*Crawford v. Washington* (2004) 541 U.S. 36, 53-54; *People v. Sanchez* (2016) 63 Cal.4th 665, 670, 680.)

"Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the

6

interrogation is to establish or prove past events potentially relevant to later criminal prosecution." (*Davis v. Washington* (2006) 547 U.S. 813, 822.)

Our review of whether a statement is testimonial and thereby implicates the Sixth Amendment is de novo. (*People v. Johnson* (2007) 150 Cal.App.4th 1467, 1478.) We consider a number of factors in determining whether the primary purpose of statements made to police was to prove past facts potentially relevant to a later criminal prosecution: (1) The surrounding circumstances; (2) whether the statements were made in the midst of an ongoing emergency; (3) whether there was an actual or perceived threat to first responders or the public; (4) the declarant's medical condition; (5) whether the focus of the questioning shifted from addressing an ongoing emergency to obtaining evidence for trial; and (6) the informality of the statement and the circumstances. (*Michigan v. Bryant* (2011) 562 U.S. 344; *People v. Chism* (2014) 58 Cal.4th 1266, 1289.) We apply an objective standard, "considering all the circumstances that might reasonably bear on the intent of the participants in the conversation." (*People v. Cage* (2007) 40 Cal.4th 965, 984.)

Here, the anonymous 911 caller stated he made the call to report a crime, and Delgadillo had "just driven past" him and "just turned" onto a street. The 911 operator asked questions aimed at determining the time and location of the crime, the whereabouts of the perpetrator, the appearance of the suspect and his car, and where he was headed. The circumstances thus objectively indicated the caller's primary purpose in calling 911 was to report a crime and gain police assistance, and the 911 operator's purpose was to gain basic information to address the emergency. Therefore, the 911 call was nontestimonial under

7

*Davis v. Washington, supra*, 547 U.S. 813, 822 and *Michigan v. Bryant*, *supra*, 562 U.S. 344, and no violation of Delgadillo's confrontation rights occurred.

## II.    Court-Imposed Assessments and Fines Did Not Violate Due Process

The trial court imposed several fines and fees without a hearing to determine Delgadillo's ability to pay them.  Delgadillo argues that imposition of these fines and fees was unconstitutional absent such a hearing pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157, 1168 (*Dueñas*).  We disagree.

Due process precludes a court from imposing fines and assessments only if to do so would deny the defendant access to the courts or if the defendant's crimes were driven by poverty. (*People v. Hicks* (2019) 40 Cal.App.5th 320, 329; see *People v. Caceres* (2019) 39 Cal.App.5th 917, 928 [declining to apply *Dueñas's* "broad holding" beyond its "unique facts"].)

Here, imposition of assessments and fees in no way interfered with Delgadillo's right to present a defense at trial or to challenge the trial court's rulings on appeal; they were imposed after trial.  And Delgadillo's crimes—unlike Mrs. Duenas's multiple convictions for driving without a license she could not afford—were not driven by poverty.  The court therefore did not violate his due process rights by imposing the assessments and restitution fines without first ascertaining his ability to pay them.

8

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED

                                                            CHANEY, J.

We concur:


            BENDIX, Acting P. J.


            SINANIAN, J.*

---

&ast; Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9